UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NADIA NATHAN** <br> 1 Miranova Place <br> Columbus, Ohio 43215 <br><br>          Plaintiff <br><br>          v. <br><br> **THE OHIO STATE UNIVERSITY** <br> Enarson Hall <br> 154 W. 12th Avenue <br> Columbus, Ohio 43210 <br><br> and <br><br> **THE OHIO STATE UNIVERSITY MEDICAL CENTER** <br> 410 w. 10th Avenue <br> Columbus, Ohio 43210 <br><br>          Defendants. | CASE NO. 2:10-cv-00872 <br><br> Judge George C. Smith <br><br> **PLAINTIFF'S FIRST AMENDED <br> COMPLAINT WITH JURY DEMAND <br> ENDORSED HEREON** |

Plaintiff Dr. Nadia Nathan complaining of Defendants Ohio State University and Ohio State University Medical Center alleges as follows:

## PARTIES

1.    Plaintiff Dr. Nadia Nathan is a citizen and resident of the State of Ohio.

2.    Defendant Ohio State University ("OSU" or "University Health System") is an educational institution organized and operated under the laws of the State of Ohio, located in Franklin County, Ohio.  Defendant OSU is an employer within the meaning of federal and state law.

3.    Defendant Ohio State University Medical Center ("OSUMC" or "OSU" or "University Health System") is an Ohio corporation providing medical services, located in Franklin County, Ohio.  Defendant OSUMC is an employer within the meaning of federal and state law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.  Plaintiff's Counts arise under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, *et. seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 626, *et. seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2615, *et. seq.* ("FMLA").

5. Venue is proper in the Eastern Division, Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because Plaintiff was employed in this division and district, and the conduct giving rise to Plaintiff's claims occurred within this division and district.

6. Plaintiff filed timely charges of discrimination against each Defendant with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received Notices of Right to Sue from the EEOC for each charge and filed this Complaint within 90 days of her receipt of the Notices of Right To Sue.

## FACTUAL ALLEGATIONS

8. Plaintiff is a highly accomplished, published, and respected female cardiac anesthesiologist who was born in Egypt in 1958.

9. Plaintiff began her employment with Defendant OSU as an Associate Professor in its College of Medicine and as a physician with Defendant OSUMC in May 2005. Plaintiff was the only female Associate Professor in her department, and there were no female full professors in the department.

10. Plaintiff was at all relevant times qualified for the positions that she held with Defendants.

11. Throughout her tenure, Plaintiff received excellent reviews and numerous

commendations for her clinical work, teaching, and research.

12. Prior to Plaintiff's employment with Defendants, she filed a charge of discrimination against her former employer alleging that she had been sexually harassed by named male doctors and that her former employer had discriminated against her because of her gender and retaliated against for speaking out against a pattern and practice of discriminating against women and failing to protect women from harassment.

13. Defendants hired Dr. David Zvara in 2006 as Chair of Anesthesiology, replacing the Chair who had hired Plaintiff.

14. Dr. Zvara was friends with one of the doctors whom Plaintiff had accused, and he requested to meet with Plaintiff during his interview process for Chair. During the meeting, he questioned Plaintiff about her impending lawsuit.

15. In early 2007, Plaintiff filed a lawsuit alleging sexual harassment and discrimination against her former employer and the individual doctors that were the subject of her previously filed charge. The doctor with whom Dr. Zvara was friends was named as a Defendant in the lawsuit.

16. Around the time that Plaintiff filed her lawsuit, Dr. Zvara began a relentless campaign of disparate and retaliatory treatment against her that included an openly hostile attitude towards her and her work, excessive scrutiny of her time and whereabouts, soliciting written complaints about her from physicians and nurses regarding trivial matters, scheduling her such that she could not adequately pursue her research, demanding without justification extra documentation regarding her research, and directing other physicians to present her research.

17. Dr. Zvara did not subject male, younger and/or American born physicians or physicians who did not make a protected complaint of discrimination or file a lawsuit to the same scrutiny and restrictions, and he admitted to Plaintiff that he was "picking on her."

18. Plaintiff made a formal written complaint to Defendants' Human Resources Department and the Dean and Associate Dean of the Medical College on June 10, 2007, stating that Defendants were retaliating against her for filing a lawsuit under Title VII and requesting that Defendants investigate and remedy their retaliatory and disparate treatment.

19. Defendants did not address Plaintiff's complaint, leaving Dr. Zvara free to continue his retaliatory behavior, such as disparaging her to colleagues, calling her into his office repeatedly to berate her for minor or manufactured administrative issues, removing her from a high-level committee post infractions in front of her colleagues, and refusing her requests for personnel to support her research.

20. Then Vice Chairman Dr. Ron Harter and Head of Cardiac Anesthesia Dr. Michael Andritsos also engaged in this pattern and practice of disparate and retaliatory treatment.

21. Dr. Harter participated in several meetings during which Dr. Zvara castigated Plaintiff for mundane things such as using sick time and observing surgery performed on her mother-in-law at her mother-in-law's request, and Dr. Andritsos reacted in an overtly hostile manner to Plaintiff's request for FMLA leave in June 2007.

22. Dr. Andritsos encouraged employees to complain about Plaintiff, harassed her for taking time off, scheduled her for unfavorable assignments, and prevented her from attending important meetings.

23. Dr. Zvara copied Drs. Harter and Andritsos on multiple letters in 2007 and 2008 to Plaintiff criticizing her for insignificant or imagined infractions. In one, he accused her of "unprofessional conduct" because allegedly late pager responses, even though he, Dr. Harter, and Dr. Andritsos knew that employees were sometimes not receiving pages rapidly or at all.

24. Plaintiff repeatedly complained to Senior Associate Dean and Associate Vice President Dr. Robert Bornstein and Human Resources that Drs. Zvara, Harter, and Andritsos

were continuing to discriminate and retaliate against her, but Defendants still took no action.

25. Plaintiff injured her back in a workplace injury in January 2008.

26. Plaintiff's lawsuit was resolved in September 2008.

27. Plaintiff requested and received FMLA leave in October 2008 to seek treatment for her back.

28. In response, Drs. Zvara, Harter, and Andritsos removed her from cardiac surgery and reassigned her to bariatric surgery, which required her to lift obese patients with a bad back.

29. In October 2008, Plaintiff asked to see her personnel file because Drs. Zvara, Harter, and Andritsos were attempting to block her reappointment, but was told by Defendants' Anesthesia Program Director to have her "legal team" obtain it.

30. Plaintiff made another formal, written complaint about Drs. Zvara, Harter, and Andritsos' discriminatory and retaliatory treatment on October 16, 2008, in which she complained that her department administrators were attempting to block her reappointment due to her lawsuit, were spreading misinformation about her to employees because of absences related to a workplace injury, and had removed her from cardiac surgeries because she had applied for FMLA leave.

31. At the time Plaintiff made this complaint, Dr. Harter was under consideration to replace Dr. Zvara. Plaintiff stated in her complaint that Dr. Zvara was intentionally creating a paper trail and a negative perception amongst her colleagues so that the incoming Chair would remain prejudiced against her and continue the hostile working environment Dr. Zvara had created during his time as Chair.

32. Dr. Harter was named Interim Chair in November 2008 and immediately took up the lead in harassing, retaliating, and discriminating against Plaintiff. Dr. Harter was appointed permanent chair in May 2009. Defendants did nothing to prevent Dr. Harter from further

retaliating or discriminating against Plaintiff.

33. Once he became Chair, Dr. Harter excessively scrutinized Plaintiff, threatened to revoke privileges over trivial issues, and made unnecessary and unfounded disparaging comments in a letter to the Dean regarding her academic reappointment, refusing to address Plaintiff's complaints of hostile treatment by Dr. Andritsos, hounding her about requested time off, withholding support for her research, allowing others to take credit for her work, and reprimanding Plaintiff for complaining to Quality Assurance that a male surgeon had verbally attacked and interrupted her while treating a critical patient.

34. Dr. Harter did not subject male, younger, and/or American born physicians to the same scrutiny, criticism, or harassment.

35. Dr. Harter and Defendants also passed Plaintiff over for promotion to Vice Chair of Anesthesia in early 2009 in lieu of a less experienced, male, younger, American born physician who did not make protected complaints or file a lawsuit.

36. Plaintiff complained again about the department administration's discriminatory and retaliatory treatment to Human Resources in April and May 2009 and made another written complaint on June 22, 2009 to OSUMC's CEO alleging gender discrimination, unequal pay, age discrimination, failure to address her numerous previous complaints, and refusal to protect her from a hostile environment.

37. On or about July 1, 2009, Plaintiff complained to Dr. Andritsos and OSUMC's head of Quality Assurance that Defendants were engaging in experimental surgical procedures that were not in the best interests of some patients.

38. Defendants terminated Plaintiff's clinical employment on July 6, 2009.

39. Defendants then prevented her from practicing medicine and only allowed Plaintiff to work temporarily her role as Associate Professor at a fraction of her previous rate of

pay.

40. Plaintiff made a formal written complaint of Title VII discrimination and retaliation and FMLA retaliation against Defendants through her counsel on September 23, 2010 and filed and filed EEOC charges alleging the same violations, as well as age discrimination, on or about November 17, 2009.

41. Defendants' Human Resources department did not respond to Plaintiff's 2006, 2007, and 2008 complaints of discrimination until January 2010, after she was terminated and after she filed EEOC charges against Defendants.

42. After Plaintiff's post-termination complaints and EEOC charges, Dr. Bornstein would not allow her to practice medicine either inside or outside the OSU Health System. Other male, younger, and/or American born physicians and physicians who did not complain of discrimination or request FMLA leave or file lawsuits have been allowed to practice outside the OSU Health System. Plaintiff protested the decision, but Defendants continued to refuse.

43. Defendants also refused to allow Plaintiff to practice medicine within the OSU Health System, even when surgeons specifically requested her assistance in surgery.

44. Plaintiff filed EEOC charges against Defendants alleging post-employment retaliation on January 19, 2010.

45. On information and belief, Defendants' administrators, including Drs. Harter, Bornstein, and Andritsos, intentionally disparaged and continue to disparage Plaintiff intentionally to potential employers, causing her to lose offers of employment and resulting in irreparable damage to her professional and academic reputation.

46. Defendants terminated Plaintiff's academic employment after she finally received another position that requires she commute to another state because they continued to refuse Plaintiff's permission to practice medicine outside of the OSU Health System.

47. Defendants engage in a pattern and practice of gender discrimination.

48. Defendants engage in a pattern and practice of unequal pay.

49. Defendants engage in a pattern and practice of national origin discrimination.

50. Defendants engage in a pattern and practice of retaliation for making complaints protected by Title VII.

51. Defendants engage in a pattern and practice of retaliation against employees who exercise their rights under the FMLA.

## COUNT I

### (Gender & National Origin Discrimination – Title VII)

52. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

53. Plaintiff was fully qualified for her positions with Defendant at all relevant times.

54. Defendants' acts in discriminating against Plaintiff because of her gender and national origin include, but are not limited to, treating her worse and paying her less than similarly situated, male and/or American born employees, creating a hostile work environment because of her gender and/or national origin, refusing her opportunities for advancement, preventing her from practicing medicine, and terminating Plaintiff's employment on account of Plaintiff's gender and national origin, in violation of Title VII.

55. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to Title VII.

## COUNT II

### (Retaliation – Title VII)

57. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

58. Plaintiff made complaints protected by Title VII.

59. Defendants' acts in retaliating against Plaintiff because of her protected complaints include, but are not limited to, treating her worse and paying her less than employees who did not make protected complaints, creating a hostile work environment, refusing her opportunities for advancement, preventing her from practicing medicine, and terminating Plaintiff's employment on account of Plaintiff's complaints, in violation of Title VII.

60. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to Title VII.

## COUNT III
## (42 U.S.C. § 1983)

62. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

63. Defendants, acting under color of state law, unlawfully restricted Plaintiff's rights under the United States Constitution by retaliating against her for accessing the courts in violation of 42 U.S.C. § 1983.

64. Defendants' acts in retaliating against Plaintiff because she exercised her First Amendment right to access the courts include, but are not limited to, treating her worse than and paying her less than employees who did not exercise their First Amendment rights, creating a hostile work environment, refusing her opportunities for advancement, preventing her from practicing medicine, and terminating Plaintiff's employment.

65. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

66. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff

has suffered injuries and damages for which he is entitled to recovery.

67. Plaintiff is entitled to judgment pursuant to 42 U.S.C. § 1983.

## COUNT IV

### (Age Discrimination – ADEA)

68. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

69. Defendants' acts in discriminating against Plaintiff because of her age include, but are not limited to, treating her differently and paying her less than similarly situated, significantly employees, refusing her opportunities for advancement in lieu of less qualified, younger employees, preventing her from practicing medicine, and terminating Plaintiff's employment on account of Plaintiff's age, in violation of the ADEA.

70. Defendants' actions were willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to the ADEA.

## COUNT V

### (FMLA Interference/Retaliation)

72. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

73. Plaintiff had a serious health condition.

74. Plaintiff availed herself of her right to FMLA leave as a result of her serious health condition by properly notifying Defendant of her need for medical leave and by taking medical leave.

75. Plaintiff made a protected complaint of retaliation under the FMLA.

76. Defendants' acts in willfully discriminating and retaliating against Plaintiff and interfering with her FMLA rights include, but are not limited to, treating her less favorably than

employees who did not exercise their FMLA rights, preventing her from practicing medicine, and terminating her employment, on account of her exercising her FMLA rights and her protected complaint of retaliation.

77. Defendants' actions were intentional, willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

78. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has been damaged and is entitled to judgment under the FMLA.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated to her employment with Defendants;

(c) That Plaintiff be awarded all pay and benefits lost from Defendants;

(d) That Plaintiff be awarded compensatory damages from Defendants;

(e) That Plaintiff be awarded liquidated damages from Defendants;

(f) That Plaintiff be awarded special damages from Defendants;

(g) That Plaintiff be awarded punitive damages from Defendants;

(h) That Plaintiff be awarded pre-judgment interest from Defendants;

(i) That Plaintiff be awarded reasonable attorneys' fees and costs from Defendants; and

(j) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled from Defendants.

Respectfully submitted,

/s/Elizabeth S. Loring
Elizabeth S. Loring (0076542)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, 6th Floor
Cincinnati, OH 45202
Phone:  (513)721-1975/Fax:  (513)651-2570
*eloring@frekingandbetz.com*
*randy@frekingandbetz.com*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters to triable.

/s/Elizabeth S. Loring

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's System.

/s/Elizabeth S. Loring