UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NADIA NATHAN,

        Plaintiff,

                                       Civil Action 2:10-cv-872
v.                                  Judge George C. Smith
                                       Magistrate Judge Elizabeth P. Deavers

THE OHIO STATE UNIVERSITY, et al.,

        Defendants.

## DISCOVERY ORDER

Plaintiff, Dr. Nadia Nathan, brings this employment action against Defendants, The Ohio State University, The Ohio State University Medical Center, and Ohio State University Physicians, Inc. (collectively "OSUMC"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination and Employment Act, 29 U.S.C. § 626 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 *et seq.*, asserting discrimination and retaliation claims. This matter is before the Court for consideration of Plaintiff's Motion to Compel Discovery (ECF No. 59), Defendants' Memorandum in Opposition (ECF No. 79), and Plaintiff's Reply (ECF No. 98). For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## I.

### A.    Factual Background

Plaintiff is a cardiac anesthesiologist. In May 2005, Defendants employed Plaintiff as an Associate Professor and as a practicing physician. In July 2009, Defendants terminated Plaintiff's clinical employment, preventing her from practicing medicine and limited her to work

as a temporary as Associate Professor.  When Plaintiff obtained another position in 2010, Defendants terminated her academic employment.  Between 2006 and Plaintiff's termination in 2009, she availed herself of FMLA leave twice.

Throughout her employment, Plaintiff reported to the Chair of Anesthesiology.  Dr. David Zvara served as Chair from 2007 until Dr. Ronald Harter succeeded Dr. Zvara in November 2008.  Dr. Harter remained Chair throughout the remainder of Plaintiff's employment.  Plaintiff alleges that when Dr. Zvara became Chair, he began retaliating against her for filing an employment discrimination lawsuit against a former employer in which she named Dr. Zvara's colleague and friend as a defendant.  Plaintiff further alleges that Dr. Harter, who was then Vice Chair, and Dr. Andritsos, who served as Director of Cardiac Anesthesiology, also engaged in retaliation.  According to Plaintiff, the retaliation intensified after she complained to Human Resources and even continued after Dr. Zvara left Defendants' employment.  Plaintiff alleges that Dr. Harter terminated her in retaliation for her lawsuit against her former employer, her complaints of retaliation, and her utilization of FMLA leave during her employment at OSUMC.  She further alleges that in terminating her, Dr. Harter relied on information Drs. Zvara and Andritsos provided as well as their actions, both of whom Plaintiff alleges held unlawful biases towards her.

Defendants deny these allegations, asserting that Plaintiff was terminated for a number of legitimate, non-discriminatory, performance-based reasons.  Defendants indicate that "[t]he reasons for termination included significant disruption of the department, poor teaching evaluations, and complaints regarding availability, timeliness, and professionalism."  (Defs.' Answrs. to Ints. 6, ECF No. 59-1 at Ex. A.)  In their answer to a subsequent interrogatory, Defendants elaborated, listing more than thirty documents that relate to Plaintiff's alleged

2

performance deficiencies.  Allegations reflected in those documents include, among others: insufficient research activity; complaints by surgeons concerning interpersonal interactions; abuse of sick leave; failing to issue information into a post-anesthesia care unit ("PACU") database; failing to respond to her pager; complaints by residents; poor teaching evaluations; poor educator ranking amongst Defendants' Department of Anesthesiology; absence from conferences; deficiencies in professional conduct; late starts; and frequent unavailability.

Consistently, Dr. Harter testified at his deposition that he decided to terminate Plaintiff because of her "frequent disruption on a lot of various fronts within the Department."  (Harter Dep. 131, ECF No. 64.)  He testified that her interactions with surgeons was disruptive and described several incidents in which Plaintiff negatively interacted with a number of surgeons. Dr. Harter testified that a series of negative interactions between Plaintiff and Dr. Sudhakar resulted in both Plaintiff and Dr. Sudhakar being evaluated by the Physicians Executive Committee, a committee conducting peer review assessments of physicians and non-physician practitioners.[1]  He described the purpose of the Committee as having fellow professionals who are not directly interacting with the individual "make assessments of whether [that individual's] care and management is appropriate."  (*Id*. at 191.)

**B.    Procedural Background**

Plaintiff subsequently filed this employment action, alleging that Defendants unlawfully created a hostile work environment, refused her opportunities for advancement, prevented her from practicing medicine, and wrongfully terminated her employment in violation of Title VII,

---

[1]Defendants' counsel objected to Plaintiff's counsel's attempt to examine Dr. Harter regarding Plaintiff's peer review assessment or identification of anesthesiologists undergoing peer review, instructing Dr. Harter not to answer.

the FMLA, and the First Amendment.  She maintains that Defendants' offered reasons are pretextual.  She alleges that Drs. Zvara, Harter, and Andritos manufactured allegations against her, solicited written complaints from physicians and nurses, ignored similar or worse conduct of other anesthesiologists, and held her to higher standards than her colleagues.

On May 24, 2011, Plaintiff propounded her first set of discovery requests.  Defendants responded on July 22, 2011.  Plaintiff served one additional document request on January 9, 2012, seeking documents regarding other anesthesiologists Defendants employed.  After taking depositions in November and December 2011, on January 4, 2012, Plaintiff's counsel sent correspondence to Defendants' counsel, asserting that Defendants' initial responses required supplementation and specifically listed deficiencies.  Defendants' counsel responded that it appeared that the documentation requested constituted new requests and that Defendants would not engage in informal discovery.  Defense counsel further advised that she would reconsider her position if Plaintiff's counsel could connect specific formal document requests with the documents she believed to be outstanding.  Finally, in this same correspondence, Defendants' counsel objected to Plaintiff's requests concerning other anesthesiologists, conveying Defendants' refusal to produce documents responsive to this request.  Plaintiff's counsel responded, setting forth which document requests she believed corresponded with the listed requests for supplemental information.

Plaintiff served a second set of interrogatories on January 20, 2012, and a third request for production of documents on January 23, 2012.  In correspondence dated February 13 and 17, 2012, Plaintiff's counsel objected to Defendants' refusal to respond to Plaintiff's January 20, 2012 document request.  Plaintiff further requested that Defendants supplement their earlier discovery responses as previously requested and indicated that she intended to file a motion to

compel if Defendants' counsel failed to respond.

On February 23, 2012, Plaintiff contacted the Court, seeking to schedule an informal telephonic discovery conference to discuss the outstanding discovery issues, which included disputes over nearly forty categories of documents in addition to disputes concerning Plaintiff's request for numerous categories of documents relating to other anesthesiologists whom Defendants employed.  Based upon the parties' representations of their respective positions, including Defendants' insistence on a Court order for appeal purposes; the sheer amount of disputed requests; and the complexity of the issues presented, the Court concluded that the requested informal telephonic conference would not be fruitful.  Plaintiff indicated that a motion to compel would be forthcoming.

On March 19, 2012, Plaintiff moved for an extension of the previously-extended March 2, 2012 discovery deadline.[2]  (ECF No. 45.)  The Court denied Plaintiff's motion, concluding that Plaintiff had failed to set forth good cause warranting modification of the discovery deadline.  (ECF No. 48.)  Plaintiff's counsel subsequently requested a telephonic conference, which the Court held on April 19, 2012.  In this conference, Plaintiff's counsel conveyed to the Court and Defendants' counsel personal circumstances of a highly sensitive nature that prevented her from timely-filing a motion to compel.  She requested a brief extension in which to file a motion to compel.  The Court agreed that Plaintiff's counsel had set forth good cause and granted her request to file a belated motion to compel, affording Plaintiff until April 30, 2012, to

_____

[2]On February 15, 2012, the Court extended the previously-extended March 2, 2012 deadline to April 2, 2009, upon the parties' agreed motion, for the limited purpose of conducting specified depositions.  (ECF No. 25.)  On April 17, 2012, the Court again extended the deadline until May 30, 2012, for the limited purpose of permitting Defendants to depose Drs. Gravelee and Nussmier.  (ECF No. 48.)

file such a motion. On April 30, 2012, Plaintiff filed the subject Motion to Compel. (ECF No. 59.) Defendants oppose Plaintiff's Motion, asserting that it is untimely and lacks merit. (ECF No. 79.)

**C.      Plaintiff's Motion to Compel**

According to Plaintiff, Defendants either failed to respond, failed to fully respond, or failed to supplement their responses to a number of her written discovery requests. Specifically, Plaintiff posits that Defendants' responses to the following discovery requests are deficient:

**REQUEST FOR PRODUCTION NO. 1:**

Produce all documents in your possession, including, but not limited to all personnel files, peer review files, faculty reviews, desk files, data files, and any and all job performance-related documents concerning:

(a)      Plaintiff;

(b)      Any person identified in your response to any of Plaintiff's Interrogatories.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents related to any complaint about an anesthesiologist as described in Interrogatory No. 7.

**REQUEST FOR PRODUCTION NO. 7:**

Produce copies of all documents, including all correspondence between Defendants and its representatives, including without limitation, its attorneys, referring to or relating to: Plaintiff, the termination of Plaintiff, the events leading to the termination of Plaintiff, Plaintiff's job performance, not allowing Plaintiff to practice medicine at OSUMC or any other medical facility or organization after her termination from OSUMC, and not appointing Plaintiff to Head of Anesthesiology.

**REQUEST FOR PRODUCTION NO. 10:**

Produce a copy of any data responsive to any discovery request in this matter that was stored, retrieved, downloaded, restored, reconstructed, removed, deleted, salvaged, regenerated and/or forensically extracted from Computer Devices or other storage media.  Please refer to Instruction No. 5 for definition of "Computer Devices."

**REQUEST FOR PRODUCTION NO. 21:**

Produce all documents in your possession, including, but not limited to all personnel files, peer review files, faculty reviews, promotion and reappointment documents, desk files, data files, and any and all job performance documents concerning every Anesthesiologist employed by Defendants between August 1, 2006 and May 31, 2011.

**REQUEST FOR PRODUCTION NO. 22:**

Produce every resident evaluation of any type or form given for any anesthesiologist employed by Defendant in academic years 2005/2006 to 2010/2011, as well as any documents discussing or analyzing said evaluations.

**REQUEST FOR PRODUCTION NO. 23:**

Produce all documents reflecting average anesthesia and/or surgery ready times for Defendant's Department of Anesthesia at OSUMC and for each anesthesiologist employed by OSU in the academic years 2005/2006 to 2010/2011.

**REQUEST FOR PRODUCTION NO. 24:**

Produce all documents, including but not limited to any tax forms and/or information submitted to any government body, reflecting any compensation and benefits—whether or not monetary—received by the following individuals from 2005 through 2011 by virtue of their employment with OSU, OSUMC, or any practice group affiliated with Defendants, and state the cost to Defendant to provide any non-monetary compensation or benefits: Dr. Michael Andritosos, Dr. Harter, Dr. David Zvara, and Dr. Michael Howie.

**INTERROGATORY NO. 7:**

Identify each patient; patient family member, or employee of either Defendant who complained about any anesthesiologist practicing at OSUMC or on faculty at OSU.  For each complaint state the following:

      (a)      The date of the complaint and the method of communicating the

complaint;

(b)     A description of the nature of the complaint;

(c)     How the complaint was addressed and resolved;

(d)     Identify the physician complained of by name, employer(s), address, phone number, job title, salary, date of birth, leave status, disability status, workplace injuries, work restrictions, national origin, date of hire, and date of termination (if any); and

(e)     Identify each individual by name, job title, and employer(s) who was advised of the complaint.

(Pl.'s Mot. to Compel 8–10, ECF No. 59; Pl.'s First Doc. Reqs. 4–6, ECF No. 59-1 at Ex. D; Pl.'s Sec. Doc. Reqs. 4, ECF No. 59-1 at Ex. F; Pl.'s Third Doc. Reqs. 4, ECF No. 59-1 at Ex. J.)

Plaintiff identifies a number of categories of documents that she maintains are responsive to the foregoing requests, but that Defendants have failed to produce. She asks the Court to compel Defendants to produce these documents. Plaintiff argues that the documents she seeks to compel "are relevant to prove her *prima facie* case" and also relevant to demonstrating that Defendants' proffered justifications for its actions are a pretext for unlawful retaliation and discrimination. (Pl.'s Mot. to Compel 11–18, ECF No. 59.)

First, Plaintiff seeks production of "[d]ocuments reflecting increase or decrease in physician headcount in Anesthesiology Department for academic years 2007/2008 to 2010/2011" and also "[p]rintouts of Dr. Harter's electronic calendar reflecting appointments with Dr. Mekjhian, Dr. Souba, Dr. Bornstein, and in-house counsel to discuss Dr. Nathan's employment and termination in 2008 and 2009." (*Id*. at 8.) According to Plaintiff, Dr. Harter referenced these documents in his deposition. She posits that these documents will lead to relevant evidence proving that "Defendants replaced Plaintiff and planned to do so earlier than events allegedly leading to her termination and terminated Plaintiff in wilful disregard for the

8

law." (*Id.*)  Plaintiff maintains that these documents are responsive to her Request for Production Numbers Seven and Ten.

Second, Plaintiff seeks production of the following types of documents, which she maintains will lead to relevant evidence demonstrating that "[o]ther anesthesiologists were either not disciplined or not terminated for the same or worse performance than that which Defendants allege caused Plaintiff's termination."  (*Id.*)

> Performance-related documents, including: (1) personnel files with performance evaluations and attached performance charts; (2) bonus information and bonus ratings; (3) Employee Relations Files; (4) Physician Executive Committee documents; (5) reappointment and promotion files; (6) incident event reports; (7) correspondence threatening to revoke or revoking privileges; (8) scheduler and peer-to-peer evaluations; and (9) full Cvs for all anesthesiologists, including Plaintiff from academic year 2006/2007 to 2010/2011.

> Resident evaluations and rankings for each anesthesiologist, including Plaintiff broken out by academic year from 2006/2007 to 2010/2011.

> Email alerts generated by Evalue to the Chair (including any Acting Chair)  of Anesthesiology for negative resident evaluations from academic years 2006/2007 to 2010/2011 for all anesthesiologists, including Plaintiff, as well as emails or memoranda reflecting action taken by the Chair or on the Chair's behalf in response to those emails.

> Documents relating to negative interactions between surgeons and anesthesiologists for the academic years 2006/2007 to 2010/2011, including documents related to conclusions and materials distributed by Senn Delaney Consultants.

> Records reflecting late surgery start times for each anesthesiologist, including Plaintiff, for each academic year from 2007/2008 to 2010/2011, including all reports, spreadsheets, and the like reflecting surgical start time data.  These include Faculty Case Late Start and Faculty First Case Late Start Reports, CEG Start Times spreadsheets, and daily OR desk reports regarding late starts.

> Documents reflecting page response times and/or page failures for academic years 2006/2007 to 2010/2011.

> Documents regarding failure by anesthesiologist to enter any PACU order at the James Hospital from the inception of the entry system through academic year 2010/2011, as well as documents referring to efforts by management to address such

failures.

Documentation kept by Doris (last name unknown) regarding physicians who were late for surgery or called in sick, as testified to by Plaintiff in her deposition.

(*Id.* at 8–10 (internal citations to the record and footnotes omitted).)  Plaintiff asserts that these documents are responsive to her Request for Production Numbers 1, 5, 7, 10, 21, 22, and 23 and also her Interrogatory Number 7.

Third, Plaintiff seeks production of "[d]ocuments reflecting the performance bonus paid and bonus performance scores for each anesthesiologist, including Plaintiff, for academic years 2005/2006 to 2010/2011."  (*Id.* at 10.)  She maintains that these documents will lead to evidence proving that Drs. Zvara, Harter, and Andritsos treated her worse than other anesthesiologists and are also relevant to calculating her economic damages.  Plaintiff asserts that these documents are responsive to her Request for Production Numbers 1, 5, 10, and 21.

Finally, Plaintiff seeks production of "[d]ocuments reflecting all compensation and benefits for the Chairs of Anesthesiology and the Director of Cardiac Anesthesiology from 2005-2011."  (*Id.*)  She submits that these documents will lead to evidence relevant to her damages for lost reputation and promotions she would have received but for her termination.  She asserts that these documents are responsive to her Request for Production Number 24.

## II.

Plaintiff has moved the Court for an order compelling Defendants to respond to her discovery requests.  Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a)(1).

The Court is satisfied that this prerequisite to a motion to compel has been met in this case.

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In considering the scope of discovery, the Court may balance Plaintiffs' "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

## III.

Defendants oppose Plaintiff's Motion to Compel on a number of grounds. Defendants first posit that Plaintiff's Motion should be denied as untimely. Alternatively, they submit that her Motion lacks merit for the following reasons: (1) Plaintiff failed to formally request "the majority of the information"; (2) Plaintiff's requests concerning other anesthesiologists lack relevance and are overbroad; and (3) the peer review documents Plaintiff seeks lack relevance. (Defs.' Mem. in Opp. 1, ECF No. 79.) The Court considers each of Defendants' contentions in turn.

A.    **Timeliness**

Defendants assert that the Court should deny Plaintiff's Motion as untimely because she "filed [the Motion] two months after the close of discovery," and she "has offered absolutely no explanation for her dilatory conduct."  (*Id*. at 8.)

Defendants' timeliness argument is not persuasive.  Defendants correctly set forth the controlling authority, but misinterpret the procedural history of this action.  For example, Defendants correctly point out that generally, "absent special circumstances, motions to compel discovery filed after the close of discovery are untimely."  *Fed. Ex. Corp. v. United States,* No. 08-2423, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) (collecting nearly a dozen cases by way of example to support proposition).  The Court further agrees that a party who misses a scheduling order's deadlines and seeks a modification of those deadlines must first demonstrate good cause.  *See* Fed. R. Civ. P. 16(b)(4); *Andretti v. Borla Perf. Indus., Inc*., 426 F.3d 824, 830 (6th Cir. 2005).  Indeed, this Court initially denied Plaintiff the extension of the discovery deadline she requested because she had failed to demonstrate good cause.  (*See* April 17, 2012 Disc. Order 7–8, ECF No. 48.)  With regard to the subject Motion to Compel, however, as set forth above, during the April 19, 2012 telephonic conference with the parties' counsel, Plaintiff's counsel conveyed special circumstances of a highly sensitive nature that prevented her from timely filing a motion to compel.  Thus, Defendants' assertion that Plaintiff "offered absolutely no explanation" for the delay in filing her Motion is incorrect.  Rather, the Court found that Plaintiff's counsel's stated reasons constituted "special circumstances" establishing good cause, and therefore, afforded Plaintiff until April 30, 2012, to file such a motion.  Plaintiff filed the subject Motion within the deadline the Court set.

### B. Formal Requests for Discovery

Defendants next argue that "[t]he overwhelming majority of the documents and information Plaintiff now seeks to have compelled were not the subject of formal discovery requests propounded upon Defendants." (Defs.' Mem. in Opp. 11, ECF No. 79.) In support of their argument, Defendants posit that the "documents reflecting increase or decrease in physician headcount" and the "printout's of Dr. Harter's electronic calendar reflecting appointments with [other doctors] to discuss Dr. Nathan's employment and termination in 2008 and 2009" that Plaintiff now seeks are not responsive to Requests for Production Numbers 7 and 10 as she maintains. (*Id.* at 12.) Defendants fail to specify which other documents are unresponsive to formal requests or to explain why any such documents are unresponsive. Instead, Defendants assert that "[t]his same incongruity and disconnect applies to all of the documents listed in Plaintiff's Motion to Compel, with the exception of peer review files and all personnel files and all job performance-related documents concerning every anesthesiologist employed by Defendants between August 1, 2006, and May 31, 2011." (*Id.* at 13.)

Defendants correctly point out that Plaintiff cannot successfully move for an order compelling documents if she did not first formally seek the documents pursuant to Federal Rule of Civil Procedure 34. This Court recently analyzed this very issue as follows:

> To the extent that he now seeks information requested informally, plaintiff should have served formal discovery requests on defendants once he did not receive the information. Plaintiff's suggestion that the parties' "course of dealings" justifies his current motion does not alleviate his duty to serve formal discovery requests when the information he sought informally was not forthcoming. *Cf. Dowling v. The Cleveland Clinic Found.*, 593 F.3d 472, 480 (6th Cir. 2010) ("While the [plaintiffs'] counsel should be applauded for beginning discovery requests informally, he was dilatory in failing to make formal discovery requests when informal requests proved unavailing."). Indeed, plaintiff cannot successfully move for an order compelling documents when he did not first seek this information through Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B) (iv) (permitting a party to move for an order compelling

>production when a party fails to respond to a request pursuant to Rule 34);
>*McDermott v. Cont'l Airlines, Inc.*, No. 08–3557, 339 F. A'ppx 552, at *560 (6th Cir.
>July 30, 2009) (finding no abuse of discretion in denying motion to compel where
>moving party did not request documents pursuant to Rule 34); *Nilavar v. Mercy
>Health Sys.-W. Ohio*, 210 F.R.D. 597, 610 (S.D. Ohio 2002) ("However, Rule 34 is
>the formal mechanism by which documents are to be requested, and Plaintiff's
>Motion to Compel Discovery is only viable as to documents requested by that
>method.").

*Nayyar v. Mount Carmel Health Sys.*, No. 2:10-CV-135, 2012 WL 203418, at *3–4  (S.D. Ohio

Jan. 24, 2012).

Upon review of the categories of documents at issue and the formal written discovery

Plaintiff propounded, however, the Court finds Defendants' assertion that Plaintiff never

formally requested the "overwhelming majority" of the documents at issue to be without merit.

The Court agrees with Plaintiff, that printouts of Dr. Harter's electronic calendar reflecting

appointments to discuss her employment and termination are responsive to her Requests for

Production 7 and 10, which request copies of "all documents . . . referring or relating to Plaintiff,

the termination of Plaintiff, the events leading to the termination of Plaintiff . . .," and which

include copies of documents stored on computer devices.  (Pl.'s First Doc. Reqs. 5–6, ECF No.

59-1 at Ex. D.)  The issue of documents reflecting an increase or decrease in physician

headcount presents a closer call.  The Court concludes that these documents would only be

responsive and bear on issues presented in this case if the documents listed the physicians' name

such that one could ascertain whether the Plaintiff's termination was contemplated.  Plaintiff

failed to formally request these documents

The Court likewise finds Defendants' objection to be without merit with regards to the

second grouping of documents Plaintiff seeks to compel.  Specifically, those documents that

Plaintiff asserts will lead to relevant evidence that "[o]ther anesthesiologists were either not

disciplined or not terminated for the same or worse performance than that which Defendants

allege caused Plaintiff's termination" are discoverable and responsive to Plaintiff's requests.

(Pl.'s Mot. 8, ECF No. 59.) This grouping included nine categories of documents that Plaintiff

classified as "performance documents." Defendants concede that this objection does not apply

to these documents. With regards to the remainder of the documents within this grouping, the

Court finds as follows:

- Documents reflecting resident evaluations and rankings for each anesthesiologist and also
  email alerts generated as a result of negative resident evaluations fall within the ambit of
  Plaintiff's Request for Production Numbers 1, 7, 10, 21, which seek all job performance-
  related documents concerning Plaintiff and/or other anesthesiologists and her Request for
  Production Number 22, which *explicitly* seeks "every resident evaluation . . . as well as
  any documents discussing or analyzing said evaluations" (Pl.'s Third Doc. Reqs. 4, ECF
  No. 59-1 at Ex. J);

- Documents relating to negative interactions between surgeons and anesthesiologists;
  documents reflecting page response times and failures; records reflecting late surgery
  start times; documents concerning failures by anesthesiologists to enter PACU orders;
  and documentation regarding physicians who were late for surgery or called in sick are
  responsive to Plaintiff's document requests that seek performance-related documents,
  Request for Production Numbers 1, 7, 10, and 21. Defendants, in their interrogatory
  responses, and Dr. Harter, in his deposition testimony, identified these as
  factors/behaviors, among several other factors/behaviors, upon which an
  anesthesiologists' performance is evaluated. Thus, documents relating to these factors
  constitute documents relating to performance. Many of these documents will also likely

be responsive to Request Number 5, which seeks documents relating to complaints about anesthesiologists.  Additionally, because Defendants and Dr. Harter identified these performance deficiencies as factors contributing to Plaintiff's termination, the documents concerning Plaintiff are responsive to Request Number 7, which seeks documents referring to or relating to the events leading to the termination of Plaintiff.  Finally, the records reflecting late surgery start times are responsive to Request Number 23, which seeks documents reflecting anesthesia and/or surgery ready times for the anesthesiologists Defendants employ.

Finally, the Court concludes that Defendants' objection lacks merit with regard to the third and fourth grouping of documents that Plaintiff seeks to compel.  Documents reflecting performance bonuses paid and bonus performance scores are responsive to Request Numbers 1, 7, and 21, which seek all documents relating to performance.  Documents reflecting all compensation and benefits for the Chairs of Anesthesiology and the Director of Cardiac Anesthesiology are responsive to Request Number 24, which seeks documents reflecting compensation and benefits that Drs. Andritsos, Harter, Zvara, and Howie received from 2005 through 2011.

In sum, Defendants' objection to producing the documents at issue on the grounds that Plaintiff failed to formally request the documents is overruled with the following exception: documents reflecting increase or decrease in physician headcount that fail to mention the physicians by name.

**C.      Requests Relating to Other Anesthesiologists**

**1.      Relevancy**

Defendants maintain that Plaintiff's requests for information relating to other anesthesiologists lacks relevance and characterize these requests as a "fishing expedition." (Defs.' Mem. in Opp. 16–17, ECF No. 79.)  Defendants submit that such discovery is inappropriate because Plaintiff has failed to meet her "burden to demonstrate that she was treated differently than other employees who engaged in the same or similar conduct for which she was disciplined." (*Id.* at 16.)  Defendants alternatively argue that Plaintiff's comparator pool is limited to the subgroup of anesthesiologists to which Plaintiff belonged, namely in the cardiac anesthesiology group.

The Court finds Defendants' relevancy arguments unavailing.  "Discrimination cases frequently turn on whether the plaintiff can identify one or more comparators who are similarly situated in all relevant respects." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 753 (6th Cir. 2012).  In *Bobo*, the Sixth Circuit reversed the district court's order limiting discovery on potential comparators, emphasizing that a plaintiff seeking discovery in an employment discrimination case is "not required to demonstrate an exact correlation between himself and others similarly situated." *Id.* at 751–53.  Rather, a plaintiff need only show that the "proposed comparators were similar in all relevant respects." *Id.*  The *Bobo* Court rejected the argument that Defendants advance here—that to obtain discovery, Plaintiff must first demonstrate that she was treated differently than her proposed comparators who engaged in the same or similar conduct for which she was disciplined:

> The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine. *See Culwell v. City of Fort Worth*, 468 F.3d 868, 873–74 (5th Cir. 2007) (holding Rule 56(f) motion should have been granted where plaintiffs sought comparator information, discovery was in defendants' sole possession, and such evidence could create genuine issues of material fact for trial on whether comparators were similarly situated, as well as on pretext).

*Id*. at 753; *see also Clay v. UPS*, 501 F.3d 695, 712, 716 (6th Cir. 2007) (quoting *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632–33 (6th Cir. 2000)) ("Clay should not be punished for his inability to point to the relevant comparators in this case[,]" because the "'general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'").  Regardless, in her Motion, Plaintiff relies on Dr. Harter's deposition testimony to offer examples of other anesthesiologists who she maintains had similar performance issues but were treated more favorably.

The Court concludes that the proper pool of comparators for purposes of discovery consists of faculty anesthesiologists reporting to Drs. Harter and Zvara.  In addition to reporting to the same supervisors, all of the members of this group provided anesthesiology and taught residents.  They all were subject to the same processes for peer review, evaluation, and reappointment.  Defendants have failed to support their assertion that the sub-group designation is a relevant factor upon which to further limit the group of comparators from which Plaintiff can seek discovery.  According to Defendants, Dr. Harter "was solely responsible for terminating Plaintiff."  (Defs.' Mem. in Opp. 14, ECF No. 79.)  Although Defendants outline five reasons upon which Dr. Harter premised his decision, none is specific to cardiac anesthesiologists.  For example, all of the anesthesiologists, not just cardiac anesthesiologists, would receive resident

18

evaluations and be expected to abide by Defendants' sick leave policies, interact professionally with surgeons, and arrive on time for duty.  Accordingly, Defendants' relevancy objection relating to Plaintiff's efforts to obtain discovery relating to her comparators is overruled.

> **2.    Scope**

Defendants next challenge the scope of the comparator discovery Plaintiff seeks to compel, asserting that it is overbroad and unduly burdensome.  Defendants assert that "there is no question that Plaintiff's document requests relating to every anesthesiologists employed by Defendants over a five year period of time (which would consist of nearly one hundred individuals) is overly broad and unduly burdensome on its face."  (*Id*. at 17.)  Defendants fail to develop this argument beyond this conclusory assertion.

"'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.'"  *Info-Hold, Inc. v. Sound Merchandising, Inc*., 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).  "Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'"  *Surles*, 474 F.3d at 305 (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

With the exception of personnel files, the Court finds that the documents Plaintiff seeks to compel are not overbroad.  Neither party identifies what types of documents Defendants include in the personnel files of anesthesiologists.  "[P]ersonnel files might contain highly personal information such as an individual's unlisted address and telephone number, marital

status, wage information, medical background, credit history (such as requests for garnishment of wages), and other work-related problems unrelated to [a] plaintiff's claims." *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999).  For this reason, the Court declines to order production simply on the personnel file designation.  Rather, the Court limits production to only those documents in the comparators' personnel files that are relevant to this action.  These could include any documents relating to the comparators' performance or performance issues as well as any documents that would be responsive to any of the other categories of documents Plaintiff seeks to compel in her Motion.  For example, if a comparator's personnel file contained resident evaluations or rankings, Defendants must produce those evaluations and rankings.

Defendants have not demonstrated that provision of the requested information would prove unduly burdensome.  Beyond asserting broad allegations of burdensomeness, Defendants fail to offer specific examples or evidence revealing the nature of its burden.  It is, therefore, impossible for the Court to determine whether the alleged burden outweighs the benefit of the requested comparator information, which is critical to Plaintiff's claims.  Accordingly, Defendants' objection to production on the grounds that it would be unduly burdensome is overruled.

**D.     Peer Review Documents**

Finally, Defendants maintain that the peer review documents Plaintiff seeks "call[] for information that is neither relevant nor reasonabl[y] calculated to lead to the discovery of admissible evidence."  (Defs.' Mem. in Opp. 14, ECF No. 79.)  In support of this contention, Defendants rely on Dr. Harter's testimony that he has not included peer review evaluations in his annual evaluations.  Defendants also assert that the peer review documents lack relevance because Plaintiff has not alleged peer review action against her.

20

Defendants' arguments with regard to the relevancy of the peer review documents lack merit.  Dr. Harter explained that performance issues sometimes generate event reports which, if serious enough, can trigger review and evaluation by the Physicians Executive Committee.  He further explained that the purpose of this Committee is to have fellow professionals who are not directly interacting with the individual "make assessments of whether [that individual's] care and management is appropriate."  (Harter Dep. 191, ECF No. 64.)  Thus, the peer review documents reflect serious accusations of unprofessional behavior and interpersonal conflict.  Consistently, Dr. Harter testified that Plaintiff's conflict with Dr. Sudhakar was so significant that it resulted in evaluation by the Committee.  Dr. Harter testified that one of the reasons he decided to terminate Plaintiff included her issues with professionalism, which included her interpersonal problems with surgeons.  Plaintiff's request for peer review documents relating to her proposed comparators is reasonably calculated to lead to matters that bear on, or that reasonably could lead to other matter that bear on the issue of whether or not there were other anesthesiologists who struggled with similar performance issues and yet were not terminated.

### III.

For the reasons set forth above, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 59.)  Defendants must provide the documents at issue **WITHIN THIRTY (30) DAYS** with the following exceptions: (1) Defendants need not produce documents reflecting an increase or decrease in physician headcount that do not identify the physicians; and (2) Defendants need not produce personnel files in their entirety.

**IT IS SO ORDERED.**

Date: October 29, 2012                        _/s/ Elizabeth A. Preston Deavers_
                                             Elizabeth A. Preston Deavers
                                             United States Magistrate Judge