UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NADIA NATHAN,**

    **Plaintiff,**

                                                                            **Civil Action 2:10-cv-872**
    **v.**                                                     **Judge George C. Smith**
                                                                   **Magistrate Judge Elizabeth P. Deavers**

**THE OHIO STATE UNIVERSITY, et al.,**

    **Defendants.**

## **OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' Motion for Reconsideration and Clarification. (ECF No. 136.) For the reasons that follow, Defendants' Motion is **DENIED**.

In the background section of the Court's October 29, 2012 Discovery Order,[1] the Court summarized the Defendants' offered reasons for terminating Plaintiff as follows:

> Defendants deny these allegations, asserting that Plaintiff was terminated for a number of legitimate, non-discriminatory, performance-based reasons. Defendants indicate that "[t]he reasons for termination included significant disruption of the department, poor teaching evaluations, and complaints regarding availability, timeliness, and professionalism." (Defs.' Answrs. to Ints. 6, ECF No. 59-1 at Ex. A.) In their answer to a subsequent interrogatory, Defendants elaborated, listing more than thirty documents that relate to Plaintiff's alleged performance deficiencies. Allegations reflected in those documents include, among others: insufficient research activity; complaints by surgeons concerning interpersonal interactions; abuse of sick leave; failing to issue information into a post-anesthesia care unit ("PACU") database; failing to respond to her pager; complaints by residents; poor

---

[1]The Court incorporates the October 29, 2012 Discovery Order (ECF No. 110) and the May 23, 2013 Opinion and Order (ECF No. 135) in their entirety by reference.

> teaching evaluations; poor educator ranking amongst Defendants' Department of Anesthesiology; absence from conferences; deficiencies in professional conduct; late starts; and frequent unavailability.
>
> Consistently, Dr. Harter testified at his deposition that he decided to terminate Plaintiff because of her "frequent disruption on a lot of various fronts within the Department." (Harter Dep. 131, ECF No. 64.) He testified that her interactions with surgeons were disruptive and described several incidents in which Plaintiff negatively interacted with a number of surgeons. Dr. Harter testified that a series of negative interactions between Plaintiff and Dr. Sudhakar resulted in both Plaintiff and Dr. Sudhakar being evaluated by the Physicians Executive Committee, a committee conducting peer review assessments of physicians and non-physician practitioners. He described the purpose of the Committee as having fellow professionals who are not directly interacting with the individual "make assessments of whether [that individual's] care and management is appropriate." (*Id*. at 191.)

(Oct. 29, 2012 Disc. Order 2–3, ECF No. 110). In an effort to uncover evidence bearing on the issue of whether Defendants disciplined or terminated her comparators for the same or worse performance, Plaintiff requested all performance-related documents relevant to this inquiry and included a specific listing of reports or files that she knew to be in existence and that she believed would include information bearing on the issue of pretext. Defendants refused to produce any comparator discovery at all, prompting Plaintiff to file a Motion to Compel (ECF No. 59). Defendants advanced a number of objections, including objecting on the grounds that the requested comparator evidence was overbroad and unduly burdensome. Defendants failed, however, to offer specific examples or any evidence revealing the nature of its burden or to otherwise develop these objections beyond their conclusory assertion. The Court, therefore, overruled their objection, finding that it was impossible to determine whether the alleged burden outweighed the benefit of the requested comparator information, which is critical to Plaintiff's claims. Within this same Discovery Order, the Court explicitly rejected Defendants' argument that Plaintiff is only entitled to obtain comparators' performance-related documents if Dr. Harter actually utilized them in his annual evaluations. Referencing Dr. Harter's testimony that serious

2

performance issues generate event reports and sometimes trigger review by the Physicians Executive Committee, the Court explained that Plaintiff's requests for these documents were reasonably calculated to discover matters bearing on the issue of whether Defendants treated her comparators with similar performance-related issues differently, irrespective of whether Dr. Harter utilized the documents in his annual evaluations.

Despite the clear language of the Court's October 29, 2012 Discovery Order, Defendants refused to produce performance-related documents beyond those found in Dr. Harter's office that he identified as documents he used in his annual evaluations of Plaintiff's comparators, unless Plaintiff had specifically identified a particular document in her original discovery request. Consequently, Plaintiff was forced to file another motion seeking an order compelling Defendants to produce performance-related documents for her comparators.  Defendants objected, asserting first that Plaintiff never requested performance-related documents; and second that the Court's October 29, 2012 Discovery Order limited the performance-related documents to be produced to those housed in Dr. Harter's office that he identified as documents he used in his annual evaluations.  The Court rejected Defendants' arguments and directed them to produce all performance-related documents for Plaintiff and her comparators, without regard to whether the documents were stored electronically, in Dr. Harter's office, or utilized in annual evaluations.  (May 23, 2013 Disc. Order 7, ECF No. 135.)  Finding that Defendants lacked substantial justification for their evasive and incomplete discovery responses, the Court awarded sanctions and attorneys' fees under Federal Rule of Civil Procedure 37(b)(2)(C).

In the subject Motion for Reconsideration, Defendants ask the Court to reconsider sanctions and clarify its May 23, 2013 Discovery Order.  Defendants first ask this Court to conclude that they reasonably focused on obtaining performance-related documents of other

3

anesthesiologists relating to professionalism issues given that Plaintiff was terminated for professionalism issues.  There are at least two flaws buried in this argument.  The first defect is that, as discussed in the excerpt set out above from the Court's October 29, 2012 Discovery Order, Defendants have asserted that Plaintiff was terminated for a number of performance-based reasons, not just professionalism.  Consistently, in their Motion for Summary Judgment, Defendants set forth a myriad of alleged performance issues that they assert led to her termination.[2]  (ECF No. 105.)  The second fault in Defendants' argument is that even with regard to the performance-related documents reflecting professionalism issues that they now concede are relevant, they did not, in good faith, undertake efforts to locate responsive documents.  Instead, even with regard to these documents, they inexplicably confined their search to Dr. Harter's office and to only those documents that he represented he had utilized to perform annual evaluations.  The Court cannot conclude that Defendants' limited search was reasonable in light of Dr. Harter's testimony that although he did not utilize event reports or documents generated by the Physicians Executive Committee in his annual evaluations, both of these types of documents would reflect serious performance-issues, including issues of professionalism.

Defendants next adopt a different yet equally specious tactic in support of its plea for reversal of this Court's award of sanctions.  Citing Rule 37's "substantially justified" language

---

[2]Alleged performance issues Defendant offers in support of its Motion for Summary Judgment include the following, among others: Plaintiff was frequently late, volatile, unproductive, and neglected duties in her patient care; Plaintiff was unable to focus and meet expectations and had problems interacting with her colleagues, including problematic interactions with surgeons; Plaintiff ignored departmental rules, policies and procedures, including abuse of leave and sick time; Plaintiff was frequently late in the morning, unavailable during the day, and received significantly substandard evaluations from residents; Plaintiff failed to follow through on the privileging and credentialing for the TEE; Plaintiff failed to submit a detailed research plan; and Plaintiff failed to complete charts and post-operative orders. (Defs.' Mot. for Summ. J. 2–33; 39–68, ECF No. 105.)

and authority establishing that fee awards are not appropriate against a losing party when there is a good faith dispute, Defendants maintain that they operated in good faith because they reasonably did not realize that Plaintiff had requested and the Court had compelled production of "almost every single document generated by the Department [of Anesthesia] and the College of Medicine over the course of six years." (Defs.' Mot. 7, ECF No. 136.)  By way of example, Defendants posit that performance-related documents "clearly" include the following types of documents: surgery reports because those reports would reflect that an anesthesiologist was involved; documents indicating that an anesthesiologist stuck herself with a needle; grant applications; billing code entries; workers' compensation claims; research articles published; email inquiries from students asking questions about a lecture; and "almost everything that is generated on a daily basis." (*Id*. at 5–8.)  Defendants' submit such an order is "akin to ordering General Motors to produce every document related to a car." (*Id*. at 4.)

Defendants' straw man fallacy fails to persuade.  In an effort to escape sanctions, Defendants have shifted from one unreasonable interpretation of the Court's October 29, 2012 Discovery Order to another.  Defendants seemingly cannot grasp the concept of "performance" as it relates to this employment discrimination case.  Under Defendants' newly proffered interpretation of the term, they apparently would be compelled to produce the playbill if an anesthesiologist performed in a theater production in the past six years.  Defendants' proffered-construction of the term "performance-related" to include any document that reflects that an anesthesiologist is employed and performing his or her job functions is patently unreasonable, inconsistent with Plaintiff's discovery requests, ignores explicit representations from Plaintiff's counsel to the contrary, and, above all, wholly inconsistent with the Court's October 29, 2012 Discovery Order.  As set forth above, the Court's October 29, 2012 Discovery Order outlined the

performance-related reasons Defendants assert resulted in Plaintiff's termination.  In support of her Motion to Compel production of performance-related documents for comparators, Plaintiff explained that she sought to discover evidence demonstrating that "[o]ther anesthesiologists were either not disciplined or not terminated for the same or worse performance than that which Defendants allege caused Plaintiff's termination." (Pl.'s Mot. to Compel 8, ECF No. 59.) Consistently, the documents that she specifically identified all bore on this issue with the exception of her request for personnel files.  The Court denied Plaintiff's request to compel personnel files, instead "limit[ing] production to only those documents in the comparators' personnel files that are relevant to this action." (Oct. 29, 2012 Disc. Order 20, ECF No. 110.) The Court explained that the personnel files might contain highly personal information, including information concerning "'other work-related problems unrelated to [Plaintiff's] claims.'" (*Id.* (quoting *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999).)

Further, in correspondence between the parties following the May 23, 2013 Discovery Order, Plaintiff's counsel again made clear to Defendants' counsel that Plaintiff was only seeking documents relevant to Plaintiff's contention that other anesthesiologists were not disciplined or terminated for the same or worse performance.  Thus, Defendants' assertion that Plaintiff sought and the Court's October 29, 2012 Discovery Order contemplated production of "almost every single document generated by the Department [of Anesthesia] and the College of Medicine over the course of six years" is completely at odds with Plaintiff's written discovery, her Motion to Compel (ECF No. 59), this Court's October 29, 2012 Discovery Order, and the parties' subsequent correspondence.  (Defs.' Mot. 7, ECF No. 136.)

Defendants' recently-filed "Update to the Court Regarding Discovery Document Production and Electronic Searches" demonstrates their persistence in rejecting a commonsense

6

approach to conducting discovery in this action. For example, Defendants represent that in an effort to comply with the Court's May 23, 2013 Discovery Order, they have searched the personal email boxes of all members of the Department of Anesthesiology and College of Medicine's administration (including administrative assistants) and also the personal email boxes of the anesthesiologists for a number of generic words such as "start," "respond," "page," "report," and "complain," among a number of other words. (ECF No. 147.) Defendants represent that the search took seven days to run and will take more than 10,000 hours to produce the responsive emails. Contrary to Defendants' assertion, the Court's May 23, 2013 Discovery Order did not require them to do this. Rather, the Order explicitly provides that "Defense counsel must execute an affidavit certifying that Defendants have *completed a reasonable inquiry* in locating and producing responsive documents and that all responsive documents of which they are aware have been produced." (May 23, 2013 Disc. Order 8, ECF No. 135 (emphasis added).) The Court added that "in the event Defendants indicate that, after a reasonable inquiry, particular types of performance-related documents Plaintiff seeks do not exist, the Court will accept Defendants' efforts as complete." (*Id*.) Thus, the Court made clear that Defendants were only obligated to conduct a reasonable inquiry. No reasonable person would construe this directive to require Defendants to search hundreds of personal email boxes for generic terms.

In sum, the Court's Discovery Orders require no further clarification. Defendants have simply refused to construe the term "performance-related" in a commonsense manner and within the context of the Court's October 29, 2012 Discovery Order, just as they have apparently refused to complete a reasonable inquiry in locating and producing responsive documents. Accordingly, Defendants' Motion for Reconsideration and Clarification is **DENIED**. (ECF No.

136.)

    **IT IS SO ORDERED.**


Date: June 14, 2013                                        /s/ *Elizabeth A. Preston Deavers*
                                                                               Elizabeth A. Preston Deavers
                                                                               United States Magistrate Judge